UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| AMANDA SCOWDEN, | : | Case No. 3:16-cv-155 |
| --- | --- | --- |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Amanda Scowden brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits on February 11, 2013, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Emily Ruth Statum concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Statum's non-disability decision.

## II.  Background

Plaintiff asserts that she has been under a "disability" since April 7, 2012. She was thirty-six years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). She has a high school education. *See* 20 C.F.R. § 404.1564(b)(2).

### A.  Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Statum that she cannot work because she has bipolar disorder with severe manic and depression and severe anxiety disorder. (Doc. #6, *PageID* #100). During her manic episodes, she has trouble concentrating and bounces from one project to the next. *Id.* at 100-01. She is not able to complete tasks. *Id.* at 100. When she is depressed, she usually just sits on the couch, reads, and does not socialize with family or anyone else. *Id.* at 101. She has trouble sleeping and is sometimes awake for days at a time. *Id*. She takes several medications, including Wellbutrin, Lamictal, Ativan, and Geodon. *Id*. Ativan makes her tired. *Id*. Plaintiff sees a psychiatrist once per month. *Id.* at 102.

Her medical records reference seizures but she does not have seizures. *Id.* at 110. Instead, Plaintiff has severe panic attacks: "I start to twitch. My whole left side starts to twitch, I lose control, I can't speak, I - - stutter very badly so I can't make … conversation." *Id*.

In June 2012, Plaintiff was admitted to the hospital for five days. *Id.* at 105. She explained, "I don't remember most of the hospital stay. … I signed myself in apparently. … And I was seeing things, I was talking to people that weren't there, talking to my dead grandmother - - … asking for her. Basically I was having panic attacks, uncontrollable shaking. … I didn't know my husband." *Id.* at 106. Since that time, she has not had similar episodes but she is very scared that it will happen again. *Id.* at 108.

Plaintiff's daily activities depend on whether she is having a good day or bad day. *Id.* at 102. On a good day, she does housework, gets the kids ready for school, makes dinner, cleans, and gets everyone to bed. *Id*. On a bad day, she does not usually get anything done. *Id*. She "might be able to get the kids up and ready, but that's usually the extent of what I do during the day and then my husband comes home and he gets laundry done, he gets dinner ready." *Id*. She has bad days—or even a bad week—every couple of weeks. *Id.* at 103. Plaintiff gets along with her family and has a few close friends. *Id.* at 104. However, she does not socialize very often. *Id*.

Plaintiff last worked as a bank teller for three years, ending in 2012. *Id.* at 98. She had a difficult time with her supervisors the last few months because she "wasn't able to make the [procedural] changes that they were implementing …." *Id.* at 104. Eventually, she quit because she was not able to "fulfill the duties …." *Id.* at 107.

Plaintiff lives with her husband and three children. *Id.* at 96. She has a driver's license and drives two or three times per week. *Id.* at 97-98.

### B. Medical Opinions

#### i. Vinod Patwa, M.D., & Ladonna Ross, NP

Dr. Patwa and Ms. Ross completed a mental impairment questionnaire in July 2014. *Id.* at 537-40. The indicated that they first saw Plaintiff in July 2012 and see her once per month. *Id.* at 537. Dr. Patwa diagnosed bipolar affective disorders–mixed and panic disorder and assigned a current Global Assessment of Functioning score of fifty. *Id.* They identified some of her signs and symptoms including a poor memory; appetite disturbance with weight change; sleep and mood disturbances; emotional lability; recurrent panic attacks; feelings of guilt/worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; blunt, flat, or inappropriate affect; decreased energy; manic syndrome; generalized persistent anxiety; and hostility and irritability. *Id.*

Dr. Patwa opined, "[Plaintiff] is easily overwhelmed, upset, anxious, states she frequently leaves events, stores[,] etc. because of her anxiety. Has difficulty making some decisions. Mood is labile, sleep pattern is very poor, disruptive. [Plaintiff] has a long history of mood swings[.]" *Id.* at 538. She would be absent from work approximately three times per month because of her impairments and treatment. *Id.* at 539. Plaintiff has extreme difficulties in maintaining social functioning and extreme episodes of deterioration or decompensation in work. *Id.* She has extreme limitations in her ability to work in coordination with or in proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. *Id.* at 539-40.

### ii. Sally Benner, PCC

Ms. Benner, Plaintiff's counselor, began treating Plaintiff in February 2005. *Id.* at 508. In March 2013, she completed a mental status questionnaire. *Id.* at 508-10. She indicated that Plaintiff's mood was severely dysphoric and anxious and her affect was flat. *Id.* at 508. Ms. Benner noted, "her concentration is severely compromised. She is able to persist only at essential tasks …." *Id.* at 509. Further, Plaintiff's treatment includes psychotropic medications and counseling. *Id.* She is compliant with treatment, and "while she has had periods of relative stability, they rarely last more than a few months." *Id.* Ms. Benner concluded, "She simply is not able to handle work pressures at this time. She is exhausted, depressed, easily overwhelmed, irritable, and often confused. She has trouble understanding [and] meeting work expectations." *Id.*

In July 2014, Ms. Benner completed a mental impairment questionnaire. *Id.* at 533-36. She identified several of Plaintiff's signs and symptoms, including a poor memory; appetite disturbance with weight change; sleep and mood disturbances; recurrent panic attacks; difficulty thinking or concentrating; social withdrawal or isolation; blunt, flat, or inappropriate affect; decreased energy; manic syndrome; intrusive recollections of a traumatic experience; generalized persistent anxiety; and hostility and irritability during mania. *Id.* at 533.

At that time, Plaintiff was "currently stable on medication, but her history demonstrates her stability is easily disrupted by psychosocial stress, sleep disturbance, and other changes." *Id.* at 534. Ms. Benner opined Plaintiff would be absent three or more times per month because of her impairments and treatment. *Id.* at 535. Further,

Plaintiff has extreme difficulties in maintaining social functioning; extreme deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and extreme episodes of deterioration or decompensation in work. *Id*.

### iii. Jerry E. Flexman, Ph.D.

Dr. Flexman evaluated Plaintiff on August 20, 2013. *Id.* at 415. He diagnosed panic disorder without agoraphobia and assigned, like Dr. Patwa, a Global Assessment of Functioning score of fifty. *Id.* at 419. He noted that her affect was intense, lability was present, and she was crying. *Id.* at 417. He also observed signs of anxiety such as constricted posture, fidgetiness, and breathing difficulties. *Id.* He indicated that she was able to maintain focus and attention throughout the sixty to ninety minute evaluation. *Id.* at 420.

Although Dr. Flexman found that there was no indication she had difficulty getting along with others in the past, he opined, "Current psychiatric issues suggest [Plaintiff] may have problems in relation to others in the workplace." *Id.* Additionally, he noted Plaintiff had problems with work pressure in the past, and her ability to cope with the evaluation was "appropriate but stressful." *Id.* "Daily living stresses do appear to significantly affect work pressures. Her ability to adjust to new tasks would require significant support. Work pressures would be expected to significantly increase psychological problems." *Id.*

### iv. Mel Zwissler, Ph.D., & Kristen Haskins, Psy.D.

Dr. Zwissler reviewed Plaintiff's records on September 3, 2013. *Id.* at 120-27. She found that Plaintiff has two non-severe impairments: anxiety disorders and effective

6

disorders. *Id.* at 125. She opined that Plaintiff had a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. *Id.* She had no episodes of decompensation. *Id.* Dr. Zwissler concluded that Plaintiff was not disabled. *Id.* at 127.

On December 16, 2013, Dr. Haskins reviewed Plaintiff's records and affirmed Dr. Zwissler's assessment. *Id.* at 129-36.

## III. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741

7

F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.     The ALJ's Decision

As noted previously, it fell to ALJ Statum to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1:      Plaintiff has not engaged in substantial gainful employment since April 7, 2012.

Step 2:      She has the severe impairments of affective (bipolar) disorder, anxiety disorder, and panic disorder without agoraphobia.

Step 3:      She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at any defined level of exertion subject to the following non-exertional limitations: low-stress work defined as unskilled, simple, routine and repetitive with no more than occasional contact with co-workers, supervisors, and the general public."

Step 4:      She is unable to perform any of her past relevant work.

Step 5:      She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 65-79). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 79.

## V.   Discussion

Plaintiff contends that the ALJ failed to properly weigh the medical opinions of record. The Commissioner maintains that substantial evidence supports the ALJ's assessment of the medical opinions.

### A.   Medical Opinions

ALJ Statum assigned the opinion of Plaintiff's treating therapist, Ms. Benner, "little weight. (Doc. #6, *PageID* #71). She correctly observes that therapists are not considered "acceptable sources" under the Regulations. *Id.*; *see* 20 C.F.R. § 404.1513.

9

Instead, therapists fall under the category of "other sources." *See* 20 C.F.R. § 404.1513(a), (d). Evidence from "other sources" can only be used to show the severity of impairments and how a claimant's impairments affect her ability to work. *Id.* § 404.1513(d).

ALJ Statum then found,

> [I]information provided by therapists does not equal in probative value reports from those medical sources shown as being acceptable such as licensed psychologists. The findings of evaluating and examining psychologists document, at most, "moderate" (rather than "marked" or "extreme") limitation of mental functioning. The opinions of such mental health professionals are entitled to greater weight than the opinion of a non-acceptable mental health source such as a therapist.

(Doc. #6, *PageID* #71) (citing 20 C.F.R. §§ 404.1513, 404.1527).

In reaching this conclusion, ALJ applied the incorrect standard. According to the Social Security Administration, "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' *including* the medical opinion of a treating source." Soc. Sec. R. 06-03p, 2006 WL 2329939, at *5 (Soc. Sec. Admin. Aug. 9, 2006) (emphasis added).[2] In other words, not only could the opinion of an "other source" equal the "probative value" of an opinion of an "acceptable source," it could be entitled to more. ALJ Statum, by applying the incorrect legal standard, gave significantly less consideration to Ms. Benner's opinion than the Regulations and Ruling 06-03p require. This constitutes error. "An ALJ's

---

[2] Soc. Sec. R. 06-03p was rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, effective March 27, 2017. At the time of the ALJ's decision in this case, Soc. Sec. R. 06-03p was still in effect.

failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley,* 581 F.3d at 407).

ALJ Statum then discussed the opinion of Plaintiff's treating psychiatrist, Dr. Patwa, finding, "for the reasons set forth above, the opinion evidence supplied by Dr. Patwa is viewed with similar skepticism." (Doc. #6, *PageID* #s 71-72). Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory

"good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

Although ALJ Statum included the standard for weighing treating physician's opinions in her decision, she failed to apply it to Dr. Patwa's opinion. Indeed, she never specifically stated how much weight she assigned his opinion. This "failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule…." *Gayheart,* 710 F.3d at 377.

However, the ALJ does provide some dubious reasons for viewing Dr. Patwa's opinion skeptically. First, she refers to the reasons she rejected Ms. Benner's opinion. (Doc. #6, *PageID* #s 71-72) ("for the reasons set forth above …."). This is illogical as she rejected Ms. Benner's opinion because she was not an "acceptable source." Dr. Patwa is an "acceptable source"—indeed, a treating source—and therefore, that reason is not applicable to him. Next, ALJ Statum found,

> It cannot be denied that [Plaintiff] experiences some significant functional limitations associated with mental impairment, but the weight of the evidence of record does not establish that such symptoms occur consistently (more than infrequently) or that [Plaintiff] has a medically determinable mental impairment that would render her "disabled" within the meaning of the Social Security Act.

(Doc. #6, *PageID* #72). She provided no further explanation or even a citation to the record.

ALJ Statum previously discussed Dr. Patwa's and Ms. Benner's opinion that Plaintiff has "marked" and "extreme" limitations. She first observed that the State Agency record-reviewing psychologists' opinion that Plaintiff has no severe limitations and only "mild" mental functioning capabilities "cannot be seen as entirely accurate" and "cannot be taken as a complete picture of [Plaintiff's] overall condition." *Id.* at 70. She then concluded, "It would be equally unreasonable to find that the 'marked' and 'extreme' degrees of limitation indicated by therapist Ms. Benner and Dr. Patwa are an accurate indication of [Plaintiff's] usual mental functioning capability." *Id.* She attempts to explain this finding by observing that Dr. Patwa indicated her "condition has been 'life-long' yet she was clearly capable of working in competitive employment prior to and continuing into 2012 without apparent worsening of her mental impairment except for the relatively brief episode in June 2012 which was apparently brought on by change in medication." *Id.*

Dr. Patwa indicates under "Prognosis:" "This is a life long condition." *Id.* at 538. The medical definition of "prognosis" is "the act or art of foretelling the course of a disease" or "the prospect of survival and recovery from a disease as anticipated from the usual course of that disease or indicated by special features of the case." *Prognosis,* MERRIAM-WEBSTER MEDICAL DICTIONARY https://www.merriam-webster.com/dictionary/prognosis#medicalDictionary (last visited Aug. 11, 2017). Accordingly, by indicating Plaintiff's condition is "life long" under the subject

13

"prognosis," he is opining that she will have the condition for the remainder of her life—not that she has had it for her entire life thus far. This is further supported by the fact that Dr. Patwa first saw Plaintiff in July 2012, after her alleged onset date. Thus, it would be unreasonable to assume that his statements in July 2014 describe Plaintiff's health before he began treating her. And, her ability to work prior to her alleged disability onset date is not reasonably probative of her work abilities starting on her onset date.

The ALJ further finds, "The possibility of non-compliance with use of prescribed medication was suggested as the possible etiology of this episode." (Doc. #6, *PageID* #71.) The ALJ, however, did not engage in the required analysis for considering a claimant's failure to follow prescribed treatment. *See* Soc. Sec. R. 82-59, 1982 WL 31384 (1982). Without such analysis, Plaintiff's possible failure to take prescribed medication was at best a dubious reason for discounting Dr. Patwa's opinions. *See Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010) ("The administrative law judge's reference to Spiva's failing to take his medications ignores one of the most serious problems in the treatment of mental illness—the difficulty of keeping patients on their medications.").

ALJ Statum also found,

> The conclusion of both Ms. Benner and Dr. Patwa that [Plaintiff] would likely miss three or more days of work per month due to mental impairment and/or treatment is entirely speculative and is without foundation in the medical record. That finding is not accepted as credible or consistent with the medical evidence. There is no logical medically determinable basis for such a conclusion (especially in light of [Plaintiff's] work history and mental health treatment records as detailed above).

14

(Doc. #6, *PageID* #71).  Yet again, she provided no further explanation or even a citation to the record.

These conclusory explanations fall short of the Regulations requirement to provide "good reasons."  The Sixth Circuit "has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'"  *Cole*, 661 F.3d at 939 (quoting *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746 ("[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." (citing *Wilson,* 378 F.3d at 546-47)).

ALJ Statum, despite discussing Dr. Flexman's opinion at length—and appearing to rely on it, never stated how much weight she assigned his opinion.  Further, she failed to provide any reasons for relying on (or rejecting) his opinion.  This constitutes error: "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant…." 20 C.F.R. § 404.1527(e)(2)(ii).  This error is particularly troubling in light of the fact that ALJ Statum minimized or ignored any part of his opinion that did not support her assessment of Plaintiff's residual functional capacity.  For example, Dr. Flexman noted, "Lability was present.  Attitude was anxious, with crying. … Signs of anxiety were noted, with constricted posture, fidgetiness and

15

breathing difficulties. … She has panic attacks, with hyperventilation and chest tightness, which she had due to being upset and anxious before the evaluation." (Doc. #6, *PageID* #s 417-18). ALJ Statum reduced that down significantly: "Some lability was evidence. Signs of anxiety were noted." *Id.* at 69; *see Gentry,* 741 F.3d at 724 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany*‒*Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir.2008) (finding error where the ALJ was "selective in parsing the various medical reports").

Accordingly, Plaintiff's Statement of Errors is well taken.

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

16

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen,* 35 F.3d 1027, 1040 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether she was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Amanda Scowden was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

Date: August 11, 2017           *s/Sharon L. Ovington*
                                Sharon L. Ovington
                                United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).